AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>PRISCILLA ELLIS<br><br>*Defendant(s)* | )<br>)<br>)   Case No.<br>)<br>)   8:16MJ1714JSS<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 22, 2016__ in the county of __Pinellas__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 1513(a)(1)(a) | Retaliating against a witness, victim, or an informant |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Rolf Gjertsen, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/28/16

_____
Judge's signature

City and state: Tampa, FL

JULIE S. SNEED, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Rolf Gjertsen, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent with the FBI since September 7, 2003. I graduated from the University of South Florida, Tampa, Florida, and earned a Bachelor's degree with a major in Accounting, as well as a Master's degree in Public Administration. I have also attended the New Agents Academy in Quantico, VA, along with various additional training classes and seminars throughout my career. As a Special Agent ("SA") with the FBI, I am authorized to investigate violations of federal law. During my tenure with the FBI, I have investigated numerous violations of federal law.

2. This affidavit is made in support of a criminal complaint charging Priscilla Ellis (hereinafter, "ELLIS") with retaliating against a witness, victim, or an informant, in violation of 18 U.S.C § 1513(a)(1)(a). This affidavit does not include each and every fact concerning this investigation known to me. Rather, it includes those facts I submit are sufficient to establish probable cause to support a warrant for the arrest of ELLIS. Said facts are based on my personal participation in this investigation, as well as information conveyed to me by other law enforcement and federal government officials, interviews of other witnesses, and review of public and private records.

3. On October 21, 2016, ELLIS was found guilty, along with two codefendants, of conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349,

and conspiracy to commit international money laundering, 18 U.S.C. § 1956(h), by a federal jury in United States District Court for the Middle District of Florida (Case No. 8:15-cr-00320-SDM-TGW). ELLIS's role in the conspiracies, which were composed in part of members of an international criminal organization based in Nigeria and operating globally, involved the creation of counterfeit checks used in a variety of fraud schemes around the country, as well as the laundering of proceeds from those and other fraud schemes.

4. During the three-week trial, more than 35 witnesses testified for the United States. As one of the two lead case agents assigned to the matter, I was one of those who testified. Among others were Witness-1, a cooperating witness who had previously pleaded guilty to his role in the conspiracy and was (and remains) incarcerated, and Witness-2, who had been recruited by another member of the conspiracy to open bank accounts to be used by the organization for money laundering. Both proved to be key witnesses to the government's case.

5. Following her conviction, ELLIS, who had been detained pending trial, was ordered to remain detained and was transported back to the Pinellas County Jail until sentencing.

6. On or about Saturday, October 22, 2016, ELLIS approached a fellow inmate at the Pinellas County Jail (hereinafter "Source-1")[1] about

---

[1] Source-1 was indicted in May 2016 on one count of Conspiracy to Commit Bank Fraud, 18 U.S.C. § 1349, and ten counts of Bank Fraud, 18 U.S.C. § 1344. Source-1 has since pleaded guilty and is awaiting sentencing.

2

participating in a counterfeit check scheme similar to the ones that had resulted in her conviction at trial the day before. In substance, ELLIS described a plan in which a coconspirator named "James" in Nigeria would send or provide access to counterfeit cashier's check images, which Source-1 and others would print and cash. In exchange, Source-1 and others would receive half of the fraud proceeds, with the remainder going to ELLIS and her associates. The affiant knows ELLIS to have repeatedly worked with a Nigerian going by the name "James Awaye" in similar fraudulent schemes in the past.

7. On or about that evening, ELLIS also approached Source-1 and asked whether Source-1 knew anyone who "could get their hands dirty," stating in substance that she wanted some people "taken care of." Source-1 understood that ELLIS wanted these people murdered, which ELLIS's subsequent statements confirmed was ELLIS's intended meaning.

8. ELLIS identified the mother of Witness-1 as one of the persons to be murdered. ELLIS provided the name of Witness-1, described Witness-1's mother's national origin, and stated that she lived in Tampa, Florida. ELLIS further stated in substance that Witness-1's mother should be murdered before Witness-1 was released from prison.

9. ELLIS identified Witness-2 by name as another person to be murdered. ELLIS described Witness-2's age, gender, race, occupation, and hometown and stated in substance that Witness-2's testimony had been the "nail in the coffin" during ELLIS's trial. ELLIS also identified an unknown male lawyer

in Houston, Texas, as a third target, but she gave Source-1 no further information about him.

10. In response to ELLIS's solicitation, Source-1 told ELLIS in substance that Source-1's cousin could murder Witness-1's mother and Witness-2 for $800 each, a price to which ELLIS agreed. ELLIS further stated in substance that ELLIS would pay Source-1's cousin with the proceeds of ELLIS's counterfeit check fraud scheme, in which ELLIS had sought Source-1's participation.

11. On or about Monday, October 24, 2016, Source-1 contacted Source-1's defense attorney and notified the attorney of ELLIS's solicitations for the fraud and murder-for-hire schemes. Source-1's attorney then contacted the United States Attorney's Office, which immediately alerted the FBI. On or about the same day, I contacted Source-1's attorney and arranged for a meeting with Source-1 and Source-1's attorney for the next morning.

12. On or about Tuesday, October 25, 2016, I and another FBI Agent met with Source-1 and Source-1's attorney at the United States Federal Courthouse in Tampa, Florida. During the meeting, Source-1 provided detailed information that corroborated Source-1's account of ELLIS's solicitations. For example, Source-1 accurately described an email account—vickentraders@aol.com—that ELLIS had regularly used to circulate counterfeit checks in furtherance of the mail and wire fraud conspiracy of which she had just been convicted. Source-1 also related that ELLIS had stated in substance that

she had counterfeit check images in that email account, which the Agents also knew to be true. Source-1 further stated in substance that ELLIS had talked about someone called "Jboi" in connection with the counterfeit checks, which the Agents knew to be a counterfeiter whom ELLIS had frequently used to create counterfeit checks in the past. The information was of a nature and specificity that Source-1, who had been incarcerated throughout ELLIS's trial, would likely have only learned it from ELLIS.

13. During the meeting with Source-1 and Source-1's attorney, Source-1's attorney further informed the Agents that another inmate (hereinafter Source-2) at the Pinellas County Jail, who was also represented by Source-1's office, had been separately solicited by ELLIS to participate in both the fraud and murder-for-hire schemes.

14. On or about the same evening, FBI Agents provided Source-1 with a recording device in order for Source-1 to record conversations with ELLIS in the Pinellas County Jail. Source-1 then concealed the device in Source-1's clothing and engaged ELLIS in conversation about the fraud and murder-for-hire schemes that ELLIS had proposed.

15. During the first recorded conversation, Source-1 told ELLIS in substance that Source-1's cousin had located Witness-1's mother and Witness-2. In response, ELLIS confirmed that she wanted both persons dead. ELLIS further stated in substance that she wanted Witness-1's mother to receive a "Colombian necktie" in order to "send a message" to Witness-1, going on to describe the term

"Columbian necktie" to mean the act of slitting someone's throat and pulling the tongue through the opening. ELLIS also confirmed that she would pay Source-1's cousin $800 for each victim.

16. On or about that evening, ELLIS contacted her daughter (hereinafter "Daughter") and directed Daughter to meet with Source-1's sister and Source-1's cousin in order to receive cash from the fraud scheme. ELLIS directed Daughter to then pay Source-1's cousin $800 "for a job," referring to the murder-for-hire scheme.

17. On or about Wednesday, October 26, 2016, Source-1 contacted an FBI undercover employee (hereinafter "UCE-1"), who pretended to be Source-1's cousin whom Source-1 described to ELLIS as being the person willing to carry out the murders of Witness-1's mother and Witness-2. During the call, Source-1 gave the phone to ELLIS, who discussed the fraud and murder-for-hire schemes with UCE-1.

18. During the call, ELLIS stated in substance to UCE-1 that Witness-1's mother and Witness-2 were the targets of the murder-for-hire scheme. ELLIS also reiterated that she wanted Witness-1's mother to receive a "Colombian necktie" in order to "send a message." ELLIS also stated in substance that Witness-2 had a nine-year-old child and that UCE-1 should "do what we got to do" regarding the child, indicating that the nine-year-old was to be killed if necessary to accomplish the murder of the child's mother, Witness-2. UCE-1

then told ELLIS in substance that "to checkmate" Witness-2's child would cost ELLIS more money, to which ELLIS agreed.[2]

19. Also during this call, ELLIS directed UCE-1 to meet ELLIS's Daughter at a restaurant in San Marcos, Texas, to deliver the proceeds of a counterfeit check that Source-1's sister had supposedly cashed for ELLIS. ELLIS stated in substance that ELLIS's Daughter would then pay UCE-1 $1,100 as a partial payment for the murders of Witness-1's mother and Witness-2. ELLIS stated in substance that ELLIS wanted Witness-2 to be killed "this weekend," while Witness-1's mother was to be killed within several weeks.

20. On or about that same evening, ELLIS spoke to Daughter about picking up money from UCE-1 and Source-1's sister at a restaurant on Friday, October 28, 2016. During that conversation, ELLIS directed Daughter to take money from the cash that Daughter would receive from Source-1's sister and pay UCE-1, money intended to cover both the transportation of the cash to Daughter and partial payment for the murder-for-hire scheme.[3]

21. On or about Friday, October 28, 2016, two undercover employees (hereinafter "UCE-2" and "UCE-3") from the San Antonio Division of the FBI met with Daughter at the time and location agreed to by UCE-1 and ELLIS and which ELLIS had relayed to Daughter. UCE-3 posed as Source-1's cousin, the role played by UCE-1 during phone conversations with ELLIS. During the meeting,

---

[2] ELLIS and UCE repeatedly used the verb "to checkmate" as code for "to murder."

[3] At present, there is no evidence that Daughter knows that the money to be paid to the UCE is intended to pay for a murder-for-hire scheme.

UCE-2 gave Daughter a bag containing $18,000 in cash and left UCE-3 alone with Daughter. Daughter then gave UCE-3 $1,600 per ELLIS's instruction and confirmed that it was for "the job" UCE-3 was doing for ELLIS. Other FBI Agents then approached Daughter and recovered the remaining cash provided to Daughter by UCE-2.

Further Affiant Sayeth Naught.

_____
Rolf Gjertsen, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 28 day of October, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE